# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILLIAM CASH,                            )<br>                                          )<br>           Plaintiff,                    )<br>                                          )<br>     V.                                  )<br>                                          )<br>CAROLYN COLVIN, Commissioner )<br>of the Social Security Administration, )<br>                                          )<br>           Defendant.                    )<br>                                          ) | 4:14CV3159<br><br><br><br>MEMORANDUM AND ORDER |

Plaintiff William Cash claims in this Social Security appeal that the Commissioner's decision to deny him benefits under Title II and Title XVI of the Social Security Act (the "Act") is contrary to law and not supported by substantial evidence. For the reasons explained below, the Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff applied for benefits in August, 2012, alleging that since July 29, 2012, he has been unable to engage in any substantial and gainful work. Plaintiff's application was denied initially and on reconsideration. Plaintiff appealed the denial to an administrative law judge ("ALJ"). Following an administrative hearing, the ALJ issued an unfavorable decision on January 31, 2014, concluding that Plaintiff was not "disabled" within the meaning of the Act. (Tr. 7-28.)

In his decision, the ALJ evaluated Plaintiff's claim using the "five-step" sequential analysis prescribed by the Social Security Regulations.[1] *See* 20 C.F.R. §§ 404.1520 and

---

[1] The Social Security Administration uses a five-step process to determine whether a claimant is disabled.

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires

416.920. In doing so, the ALJ found that Plaintiff has the severe impairments of closed head injury with cerebral trauma, adjustment disorder with anxiety and depressed mood and right shoulder bursitis/arthritis and status post rotator cuff repair surgery. (Tr. 13.)  The ALJ formulated Plaintiff's residual functional capacity ("RFC")[2] as follows:

> [C]laimant retains the ability to lift or carry 10 pounds; stand or walk two hours in an eight-hour workday; sit six hours in an eight-hour workday; can push or pull within the limits given; no use of ladders, ropes or scaffolds; no work at unprotected heights or around dangerous machinery; no balancing; occasional overhead reaching with the right upper extremity; no overhead work as a primary job duty; occasional use of ramps and stairs; occasionally stoop, kneel, crouch and crawl; should avoid concentrated exposure to temperature extremes, humidity, noise, vibrations and inhaled pulmonary irritants such as fumes, odors, dust or gases; simple instructions and tasks; occasional contact with coworkers, supervisors and the general public; and, working with the general public should not be a primary job duty.

(Tr. 15.)  The ALJ determined that, given Plaintiff's RFC, he was unable to perform his past relevant work as a farm worker, delivery truck driver, or feed truck driver, but that there was

---

> that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006).

[2] RFC, or "residual functional capacity," is what the claimant is able to do despite limitations caused by all of the claimant's impairments. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545(a)).

other work Plaintiff could perform, such as wire wrapper, printed circuit board inspector and production checker. (Tr. 21-22.) Therefore, the ALJ determined that Plaintiff was not entitled to benefits.

Plaintiff requested review of the ALJ's decision by the Appeals Council of the Social Security Administration. The Appeals Council denied Plaintiff's request for review. (Tr. 1-3.) Thus, the ALJ's decision stands as the final decision of the Commissioner of Social Security.

### SUMMARY OF MEDICAL HISTORY[3]

On July 28, 2012, Plaintiff was involved in an all-terrain vehicle ("ATV") accident, in which he suffered a left subdural hematoma with some intraparenchymal hemorrhage. (Tr. 271.) A CT scan revealed evidence of petechial hemorrhages in the subfrontal region of the brain. (Tr. 278.) Plaintiff also had petechial hemorrhages and a contusion over the left temporal lobe. (*Id*.) As a result, doctors performed a procedure to relieve pressure on Plaintiff's brain. (Tr. 279.) A subsequent CT scan revealed a remaining subdural hemorrhage in Plaintiff's brain. (Tr. 324-25.)

In October, 2012, Plaintiff was examined by Dr. Ronald Dobesh ("Dr. Dobesh"). (Tr. 562-63.) Dr. Dobesh found Plaintiff to be alert and oriented, but noted that Plaintiff was positive for memory impairment. (Tr. 563.) Plaintiff was examined by Dr. Dobesh again in November, 2012. (Tr. 611-614.) At that time, Dr. Dobesh noted that Plaintiff was oriented with intact memory. (Tr. 613.) Plaintiff returned to Dr. Dobesh in February, 2013, at which time Dr. Dobesh again noted that Plaintiff's memory was intact. (Tr. 601-603.)

In April, 2013, Plaintiff was examined by neurologist, Dr. Gizelle Spurgeon ("Dr. Spurgeon"). Dr. Spurgeon reported that Plaintiff had improved greatly since this accident. She noted Plaintiff's statement that he could "remember anything from 10 years ago, but he will not remember anything about the examiner in 2 hours." (Tr. 650.) Dr. Spurgeon opined

---

[3] Plaintiff's appeal only relates to Plaintiff's alleged memory impairment. Therefore, the medical history set forth herein will focus on this impairment.

that Plaintiff's reported memory trouble would likely made him disabled, but recommended that Plaintiff undergo more formal psychometric examination to document his limitations. (Tr. 651.)

In May, 2013, Plaintiff underwent a consultative mental examination with David Duke, Ph.D. ("Dr. Duke"). (Tr. 666-75.) During the examination, Dr. Duke conducted a psychological interview and administered the Wechsler Memory Scale ("WMS-IV"). Based on this testing, Dr. Duke found that Plaintiff's ability to listen to information and then recall the information twenty to thirty minutes later was in the extremely low range. (Tr. 674.) Dr. Duke observed that Plaintiff displayed a "notable amount of forgetting" between immediate and delayed tasks on the WMS-IV. (*Id*.) Dr. Duke opined that Plaintiff could not sustain attention and concentration, but could understand, remember, and carry out short and simple instructions. (Tr. 673.) Dr. Duke also stated that compared to other individuals with a similar level of immediate memory capacity, Plaintiff's "delayed memory performance is in the Extremely Low range, indicating that his delayed memory is much lower than expected given his level of initial encoding." (Tr. 674.) Dr. Duke diagnosed Plaintiff with dementia due to head trauma, and noted that Plaintiff suffered mild symptoms of irritability and anxiety. (*Id*.)

On or about June 15, 2013, Dr. Glenda Cottam ("Dr. Cottam") reviewed Plaintiff's records and completed a mental residual functional capacity assessment. (Tr. 112-14.) Dr. Cottam opined that Plaintiff had understanding and memory limitations, but that they were moderate with respect to understanding and remembering detailed instructions, and not significant with respect to remembering locations, work-like procedures, and very simple instructions. (Tr. 110.) Dr. Cottam further found that Plaintiff was not significantly limited in his ability to make simple work-related decisions. (Tr. 111.) In reaching these conclusions, Dr. Cottam noted that Plaintiff's memory was adequate to provide Dr. Duke information, and that Plaintiff had only recently begun complaining of memory impairment, despite previously indicating that he had intact memory. (*Id*.)

## ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a "reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* at 960-61 (quotation omitted). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence exists for a contrary outcome. *Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

On appeal, Plaintiff claims that the ALJ's credibility assessment was flawed because it did not account for Plaintiff's confabulation, or his creation of new and false memories to replace memory gaps resulting from his head injury. Plaintiff also maintains that the ALJ erred by relying on Plaintiff's faulty memory as a basis to discredit the objective medical evidence. In particular, Plaintiff argues that the ALJ improperly discredited Dr. Duke's opinion because Dr. Duke relied on Plaintiff's subjective complaints when assessing Plaintiff's limitations. Additionally, Plaintiff asserts that the RFC assessment is flawed because Dr. Cottam's opinion is not substantial evidence and does not support the rejection of other medical opinions.

### I. Credibility

Plaintiff maintains that the ALJ erred in assessing the credibility of his subjective complaints. To assess a claimant's credibility, the ALJ must consider all of the evidence, including "prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions." *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000). The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole. *Id.* at 972. "Where adequately explained and supported, credibility findings are for the ALJ to make." *Id.* (citing *Tang v. Apfel*, 205 F.3d 1084, 1087 (8th Cir. 2000)). After reviewing the

matter, the Court finds that the ALJ's conclusion that Plaintiff is not fully credible is supported by substantial evidence.

Plaintiff's primary argument on appeal is that the ALJ failed to recognize that his memory impairment caused his inconsistent testimony. For instance, Plaintiff maintains that the inconsistent statements he made regarding his alcohol use and the cause of his ATV accident were the result of confabulation, or his creation of false memories to replace memory gaps caused by his head injury. However, as Plaintiff admits, there is no support from any medical professional that Plaintiff confabulated memories. To the contrary, the medical records, as well as Plaintiff's testimony at the administrative hearing, supports the ALJ's conclusion that Plaintiff's memory impairment is not as severe as he claims. As an example, when Plaintiff was examined by Dr. Spurgeon in April, 2013, he reported that he would not remember anything about Dr. Spurgeon's examination in two hours. (Tr. 650.) Yet, Plaintiff's disability forms indicate that he had short-term memory loss and difficulty recalling events ten minutes in the past. (Tr. 248.) Plaintiff testified at the administrative hearing that he could not remember what he had been told five minutes previously. (Tr. 40.) Plaintiff's inconsistent statements about the degree of his memory impairment suggest that Plaintiff's alleged memory loss is exaggerated.

Moreover, Plaintiff was able to testify coherently at the administrative hearing. He was able to respond to questions logically, with seemingly little difficulty. He was able to recall extensive biographical history. (Tr. 36-41.) He was also able to detail his medical problems and limitations, as well as discuss actions his wife allegedly takes to help him due to his alleged memory impairment. (Tr. 42-47.) Plaintiff's ability to recall and discuss his current limitations in such detail undermines Plaintiff's assertion of disabling short-term memory loss.

The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about his or her limitations. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Id.* at 714. In this case, the ALJ pointed to substantial evidence in the record supporting his decision to discount Plaintiff's subjective allegations. As such, this Court defers to the ALJ's credibility finding.

## II.     Evaluation of Medical Evidence and RFC Assessment

Plaintiff argues that the ALJ erred by using Plaintiff's faulty memory as a basis for disregarding Dr. Duke's opinion.  Specifically, the ALJ gave little weight to Dr. Duke's testimony because Plaintiff's unreliability called "into question everything [Plaintiff] told the examiner, and calls into question [Plaintiff's] responses during psychological testing and the mental status examination." (Tr. 18.)  Because the ALJ found Plaintiff unreliable, the ALJ gave Dr. Duke's opinion little weight.  As explained above, the ALJ's conclusion that Plaintiff is not fully credible is supported by substantial evidence.  Still, there is other evidence in the record which supports the ALJ's decision to attribute little weight to Dr. Duke's opinion.

Dr. Duke's assessment regarding the severity of Plaintiff's memory impairment is inconsistent with other medical evidence.  In November, 2012, and again in February, 2013, Dr. Dobesh noted that Plaintiff was oriented with intact memory. (Tr. 603, 611-614.)  A few months later, in April, 2013, Dr. Spurgeon, who is a neurologist, reported that Plaintiff had improved immensely since his accident.  (Tr. 650.)  Dr. Cottam opined that Plaintiff had understanding and memory limitations, but that they were only moderate with respect to understanding and remembering detailed instructions, and not significant with respect to remembering locations, work-like procedures and simple instructions.  (Tr. 612-14.)

Dr. Duke's opinion is further undermined by statements made by Plaintiff regarding his alleged limitations.  Dr. Duke concluded that Plaintiff could not sustain attention and concentration. (Tr. 673.)  However, during Dr. Duke's assessment, Plaintiff told Dr. Duke that he did "all right as long as it's simple things [and] I keep my mind on one thing." (Tr. 668.)  Plaintiff further testified at the administrative hearing that he would not "start spacing out" if he really focused on the person he was speaking with.  (Tr. 44.)  Plaintiff's statements conflict with Dr. Duke's assessment of the severity of Plaintiff's memory impairment.

Plaintiff further claims that the ALJ's RFC assessment was improper because the opinion of the state agency examiner, Dr. Cottam, does not constitute substantial evidence to support the rejection of the other medical opinions in the record.  According to Plaintiff, the ALJ improperly rejected all of the opinions from treating and consultative examiners and only used a reviewing physician's opinion to support the RFC assessment.  This argument

7

is not persuasive. In this case, it is apparent that the ALJ extensively considered the medical evidence, as well as the other evidence, and determined that Dr. Cottam's opinion deserved great weight because it was consistent with the record as a whole. (Tr. 20.) *See Krogmeier v. Barnhardt*, 294 F.3d 1019, 1024 (8th Cir. 2002) ("Even though the opinion of a consulting physician alone does not generally constitute substantial evidence, . . . the ALJ did not rely solely on the opinion of a consulting physician, but also conducted an independent review of the medical evidence"); *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (affirming an ALJ's decision that rejected a treating physician's opinion over those offered by a reviewing physician). The ALJ did not err by relying on Dr. Cottam's opinion.

Moreover, there is no indication that the ALJ failed to fully develop the record or overlooked any evidence in assessing Plaintiff's RFC. It is clear that in formulating Plaintiff's RFC, the ALJ considered all relevant evidence, including, but not limited to, medical opinions, treatment records, and Plaintiff's own testimony. The ALJ's RFC assessment is supported by substantial evidence.

## CONCLUSION

For the reasons stated, and after careful consideration of each argument presented in Plaintiff's brief, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

**IT IS ORDERED** that judgment shall be entered by separate document providing that the decision of the Commissioner is affirmed.

**DATED March 25, 2015.**

> **BY THE COURT:**
>
> **S/ F.A. Gossett**
> **United States Magistrate Judge**